**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABRAHAM GRINDLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 5030 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CATHAY PACIFIC AIRWAYS, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Abraham Grindling, a former pilot for Defendant Cathay Pacific Airways, Ltd.

("Cathay"), refused to obtain a Covid-19 vaccine despite Cathay's vaccine mandate. After

Cathay terminated his employment, Grindling filed this lawsuit, claiming that Cathay violated

Title I of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*,

by failing to accommodate him and retaliating against him. Cathay moves to dismiss Grindling's

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Grindling's

accommodation claim requires interpretation of the collective bargaining agreement governing

Grindling's employment, the Court finds that the Railway Labor Act ("RLA"), 45 U.S.C. § 151

*et seq.*, precludes the Court from addressing that claim. And because Grindling does not contest

his failure to properly exhaust his administrative remedies with respect to his retaliation claim,

the Court cannot consider that claim at this time. Therefore, the Court grants Cathay's motion

and dismisses Grindling's complaint without prejudice.

## BACKGROUND[1]

Grindling worked for Cathay as a pilot for approximately ten years until his termination in January 2022. Grindling most recently flew cargo planes for Cathay internationally and domestically, including to and from Hong Kong, Singapore, and Chicago. In late 2019, the Covid-19 virus emerged in China and spread worldwide. In March 2020, the World Health Organization declared Covid-19 a global health emergency. In December 2020, the U.S. Food and Drug Administration issued the first emergency use authorization for Covid-19 vaccines.

During the first year of the Covid-19 pandemic, Grindling continued flying domestic and international routes for Cathay. Beginning in late January 2021, however, Cathay increasingly stopped using U.S.-based pilots, including Grindling, for international cargo flights, with Cathay ultimately pausing its cargo operations in July 2021. In spring 2021, Cathay's general manager of aircrew asked Cathay pilots to voluntarily report their Covid-19 vaccination status, and a Cathay representative notified Grindling's union, the U.S. Aircrew Officer's Association ("USAOA"), that it was collecting a list of vaccinated pilots. Grindling consulted with Hong Kong aviation medical examiners ("AMEs"), who confirmed that Hong Kong medical authorities did not require him to obtain a Covid-19 vaccination to fly aircraft for Cathay. He

---

[1] The Court takes the facts in the background section from Grindling's complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Cathay's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court also considers the additional facts Grindling has included in the affidavit attached to his response to the motion to dismiss to the extent they are consistent with the allegations in his complaint. *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001). Finally, although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, the Court can do so where the plaintiff references a document in his complaint that is central to his claims. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Grindling did not attach his EEOC charge to the complaint, which Cathay submitted as an exhibit to the motion to dismiss. The Court takes this charge into account because Grindling discusses the EEOC charge in his complaint and it must consider the allegations in the charge to determine the proper scope of Grindling's claims. *See Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006) (collecting cases).

also saw his doctor, who provided a note that Grindling should not receive a Covid-19 vaccine. Grindling submitted this note to Cathay on July 28, 2021.

On August 29, 2021, Cathay announced a Covid-19 vaccine requirement for its U.S.-based pilots. The USAOA notified its members on September 1, 2021 that it supported Cathay's decision, noting that Cathay claimed that Hong Kong civilian authorities required those flying to Hong Kong to be vaccinated. On September 3, 2021, Grindling again submitted his doctor's note to Cathay, indicating he had a medical condition that kept him from receiving the vaccine. On October 4, 2021, Cathay directed him to fill out a medical records form to allow it to access his medical information.

On November 25, 2021, Reena Rollason, a Cathay representative, contacted Grindling to negotiate the terms of a medical accommodation. On November 29, 2021, the parties had a meeting, in which Cathay offered Grindling the chance to resign and apply for different jobs with Cathay, none of which involved a flight crew position. On December 6, 2021, Cathay reiterated its position that Grindling could not serve as a pilot while remaining unvaccinated, indicating that if Grindling did not voluntarily resign, then Cathay would terminate his employment. Grindling informed Cathay that he had already contracted the Covid-19 virus and therefore was protected against future infection, and he requested a variety of possible accommodations, such as flying domestic cargo routes or working in simulators in Miami. Grindling also attempted to invoke the provisions of the collective bargaining agreement ("CBA") between Cathay and the USAOA providing for ground duty assignments for pilots found medically unfit for flight duties, but Cathay refused to honor that provision.

On December 30, 2021, Grindling refused Cathay's voluntary separation package. On January 4, 2022, Cathay fired Grindling for a "deemed missed duty." Doc. 1 ¶ 77. The USAOA

filed an initial grievance on Grindling's behalf on January 13, 2022, contending that Grindling had never "missed duties" as defined in the CBA in his ten years working for Cathay and that Cathay's decision to terminate Grindling for a "deemed missed duty" opened the door under the CBA for Cathay to terminate pilots for any reason. Cathay denied the grievance on February 18, 2022. Grindling appealed that decision on March 7, 2022, which Cathay denied on March 18, 2022. Grindling then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), contending that Cathay denied his accommodation request and discriminated against him in violation of the ADA. Grindling received his right to sue notice on May 3, 2023.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

4

## ANALYSIS

### I.  Failure to Accommodate Claim

Cathay argues that the Court should dismiss Grindling's failure to accommodate claim

because the RLA precludes it and, regardless, he cannot allege a qualifying disability.  Because

the Seventh Circuit treats RLA preclusion as jurisdictional, the Court turns to it first.  *See Int'l*

*Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. BNSF Ry. Co.*, 546 F. Supp. 3d 721, 726

(N.D. Ill. 2021) (reviewing Seventh Circuit case law concerning RLA preemption).[2]

The RLA, which applies to railroads and airlines, provides for the "prompt and orderly

settlement" of labor disputes in these industries.  *Carlson v. CSX Transp., Inc.*, 758 F.3d 819,

831 (7th Cir. 2014) (citing 45 U.S.C. § 151a).  The RLA requires parties to adjudicate their "so-

called 'minor disputes'" through arbitration before an adjustment board established by a

governing CBA.  *Id.* (citation omitted).  Minor disputes grow "out of grievances or out of the

interpretation or application of agreements concerning rates of pay, rules, or working

conditions."  *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 303 (1989) (citation

omitted); *see also Carlson*, 758 F.3d at 832.

The RLA, however, does not preclude independent claims, that is, claims that cannot be

"conclusively resolved" by interpreting a CBA.  *Carlson*, 758 F.3d at 832 (citing *Hawaiian*

*Airlines, Inc. v. Norris*, 512 U.S. 246, 263, 265 (1994)).  "[P]urely factual questions" about an

employer's conduct or motivation do not "require[ ] a court to interpret any term of a collective-

bargaining agreement."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).  For

---

[2] The Seventh Circuit has raised the question of whether the RLA's arbitration requirement should instead be considered a substantive requirement of a claim in light of Supreme Court precedent but has not yet addressed the issue.  *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 901 (7th Cir. 2019) (finding it unnecessary to determine "the effect of the Supreme Court's modern understanding of the difference between 'jurisdiction' and other kinds of rules" on the treatment of RLA preclusion).  The Court thus continues to treat the question as one of subject matter jurisdiction.

example, the RLA does not preclude claims involving "statutory protections against employment discrimination and retaliation." *Carlson*, 758 F.3d at 832; *see also Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 318 (7th Cir. 1994) (RLA did not preempt the plaintiff's claims because they involved "rights and obligations that exist[ed] independent of the collective bargaining agreement" and therefore did not require interpretation of the CBA). But the RLA does preclude claims brought under independent federal statutes, such as the ADA, where the claim "can be dispositively resolved through an interpretation of the CBA." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001).

Cathay contends that Grindling's accommodation claim requires interpreting the terms of the CBA, meaning that the RLA precludes the claim. Grindling himself acknowledges this in his complaint, alleging that Cathay "did not meaningfully participate in the interactive process by refusing to abide by the applicable provision of its own [CBA]" and instead only offering him options to resign and take on a non-pilot job, resign with a severance package, or face termination. Doc. 1 ¶¶ 92–93; *see also id.* ¶¶ 71–72 (alleging that Cathay refused to honor § 2.7 of the CBA, which "appears to exactly cover the circumstances of [Grindling's] case"). Grindling also alleges that Cathay's rationale for firing him for a "missed duty" does not comport with the CBA's definition of a "missed duty." As Cathay points out, the CBA also includes a seniority system, which governs the assignment of pilots' routes and other duties and would impact the accommodations Cathay could provide Grindling. In other words, determining the reasonableness of Grindling's proposed accommodations will require interpretation of the governing CBA's seniority system and other provisions. Thus, because Grindling's claim requires a potentially dispositive interpretation of the CBA, the RLA precludes this minor claim. *See Brown*, 254 F.3d at 661, 664 (the RLA precluded the plaintiff's ADA claims because the

"heart of the dispute" was "a disagreement over the interpretation of" a CBA's seniority provisions, with the ADA not requiring accommodations that interfere with other employees' seniority rights); *Odell v. Kalitta Air, LLC*, 678 F. Supp. 3d 904, 917 (E.D. Mich. 2023) ("[W]hen an employee insists on an accommodation that implicates his or her coworker's seniority rights under a CBA, it becomes necessary to interpret the CBA to determine whether the accommodation would impose an undue hardship by forcing the employer to violate the CBA."), *aff'd*, 107 F.4th 523 (6th Cir. 2024).

Grindling nonetheless argues that the RLA does not preclude his failure to accommodate claim because it involves a major dispute, with Cathay imposing a major change to his working conditions over which Cathay needed to negotiate with the USAOA. But Grindling improperly frames the question. *See Bhd. of Maintenance of Way Emps. v. Union Pac. R.R. Co.*, 358 F.3d 453, 456 (7th Cir. 2004) ("In the context of interpreting classes of controversy in railway labor disputes, [major and minor disputes] are not used in their ordinary sense; they are terms of art in the case law under the RLA."). A major dispute "involve[es] the formation or modification of a collective bargaining agreement," *Carlson*, 758 F.3d at 832, for which "the RLA requires the parties to submit to a lengthy process of bargaining and mediation, during which they must maintain the status quo," *Bhd. of Maint. of Way Emps.*, 358 F.3d at 456. This case does not address Cathay's general ability to impose the vaccination requirement on all pilots under the CBA, which would amount to a major dispute. Instead, Grindling's specific claim—that Cathay failed to accommodate his alleged disability—requires a potentially dispositive interpretation of the CBA, making it a minor dispute requiring use of the RLA's arbitration procedures. *Carlson*, 758 F.3d at 831–32. Thus, the major versus minor distinction Grindling attempts to draw is ultimately irrelevant.

Grindling also argues that, even if considered a minor dispute, Cathay refused to engage in the administrative process and so he can proceed with the claim in federal court. *See Miklavic v. USAir Inc.*, 21 F.3d 551, 555 (3d Cir. 1994) ("Courts have jurisdiction to hear a minor dispute when: 1) the employer repudiates the private grievance machinery[.]"). The Seventh Circuit does not appear to recognize such an exception, however, with courts in this district instead treating an employer's refusal to arbitrate as a reason to compel arbitration, not a basis to find that RLA preclusion does not apply. *See Santiago v. United Air Lines, Inc.*, 969 F. Supp. 2d 955, 969–71 (N.D. Ill. 2013) (employer could not bar employee from bringing grievance to arbitration, with the appropriate remedy being to compel the employer to submit the grievance to arbitration); *see also Smith v. Am. Airlines, Inc.*, 414 F.3d 949, 953 (8th Cir. 2005) ("Where all an employee shows is the need for judicial help in compelling arbitration, the repudiation exception does not apply. A federal court may compel arbitration at the employee's (or the union's) request, but it may not intrude upon the adjustment board's authority by deciding the merits of the collective bargaining agreement dispute."). Therefore, the Court finds that the RLA precludes Grindling's failure to accommodate claim, which he must pursue through the RLA's established procedures for minor disputes.[3]

---

[3] Although the Court concludes that the RLA precludes Grindling's ADA failure to accommodate claim, it also notes that, even if not precluded, the claim would fail on its merits because "not being vaccinated is not a disability under the ADA." *Brode v. Xeris Pharms., Inc.*, No. 22 CV 2903, 2023 WL 7220554, at *2–3 (N.D. Ill. Nov. 2, 2023) (collecting cases); *see also Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300, at *2 (N.D. Ill. Apr. 10, 2024) (agreeing with the defendant that "a contrary conclusion would mean that every unvaccinated person in the United States is now disabled under the ADA" (citation omitted) (internal quotation marks omitted)). Further, to the extent that Grindling contends in his response that Cathay regarded him as disabled, the ADA does not require employers to provide reasonable accommodations to those regarded as having a disability. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 n.4 (7th Cir. 2013) (citing 42 U.S.C. § 12201(h)).

## II.     Retaliation

Cathay also moves to dismiss Grindling's retaliation claim, arguing, among other things, that Grindling failed to exhaust his administrative remedies because he did not include retaliation in his EEOC charge.  An ADA plaintiff cannot "rais[e] a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999).  This rule "gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).  An allegation in an EEOC charge is reasonably related to a federal claim if, at minimum, it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005).  The relevant inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (quoting *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999)).

Aside from acknowledging that an exhaustion requirement exists for his claims, Grindling fails to respond to Cathay's argument.  In doing so, he has effectively waived his opposition to dismissal on exhaustion grounds.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").  Moreover, his EEOC charge does not mention retaliation, instead stating only that Cathay allegedly failed to accommodate his disability and discriminated against him because it required him to obtain a Covid-19 vaccination.  *See, e.g.*, *Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 864–65 (7th Cir. 2010) ("Normally, retaliation and discrimination charges are not considered

9

'like or reasonably related' to one another."); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726

(7th Cir. 2003) ("[R]etaliation, sex discrimination, and sexual harassment charges are not 'like or

reasonably related' to one another to permit an EEOC charge of one type of wrong to support a

subsequent civil suit for another."); *Ekanem v. Health & Hosp. Corp.*, 724 F.2d 563, 573 (7th

Cir. 1983) ("A charge that a given wage is too low because of unlawful *retaliation* is not the

same as a charge that a given wage is too low because of unlawful *race discrimination*.").  And

because he filed his EEOC charge months after his termination, he cannot take advantage of the

recognized exception to the exhaustion requirement for claims based on post-charge retaliatory

acts.  *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 482–83 (7th Cir. 1996). (post-filing

exception to exhaustion requirement does not apply to retaliatory acts that occurred before the

plaintiff filed his EEOC charge).  Because Grindling has not made any arguments as to why the

Court should find that he satisfied the exhaustion requirement, the Court dismisses his retaliation

claim.[4]

## CONCLUSION

For the foregoing reasons, the Court grants Cathay's motion to dismiss [25].  The Court

dismisses Grindling's complaint without prejudice.


Dated: September 11, 2024

_____
SARA L. ELLIS
United States District Judge

---

[4] The Court dismisses Grindling's retaliation claim without prejudice, which allows him the opportunity
to refile his claim if and when he exhausts his administrative remedies with respect to the claim. *Teal v.
Potter*, 559 F.3d 687, 693 (7th Cir. 2009); *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989).  Because
it appears that the time to file an EEOC charge with respect to a retaliation claim has passed, any attempt
to refile these claims in federal court is likely subject to a statute of limitations defense, but the Court
need not decide the issue at this time. *See Hillman v. Costco Wholesale Corp.*, No. 12 C 6012, 2014 WL
3500131, at *10 (N.D. Ill. July 14, 2014).