UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABRAHAM GRINDLING, | ) |
| Plaintiff, | ) |
| | ) No. 23 C 5030 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CATHAY PACIFIC AIRWAYS, LTD., | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Abraham Grindling, a former pilot for Defendant Cathay Pacific Airways, Ltd. ("Cathay"), refused to obtain a Covid-19 vaccine despite Cathay's vaccine mandate. After Cathay terminated his employment, Grindling filed suit, claiming that Cathay violated Title I of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to accommodate him and retaliating against him. The Court previously dismissed Grindling's complaint, concluding that the Railway Labor Act ("RLA"), 45 U.S.C. § 151, precludes his failure to accommodate claim and that Grindling did not exhaust his administrative remedies with respect to his retaliation claim. Doc. 30. Grindling then filed a first amended complaint (the "FAC"), in which he brings claims for ADA discrimination and failure to accommodate, as well as for violations of the RLA. Cathay moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Grindling moves to transfer the case to the U.S. District Court for the District of Columbia, where he has a separate case filed against his union. Because Grindling does not allege facts that suggest that he suffers from a qualifying disability under the ADA, he cannot proceed with his ADA claims. Additionally, because the RLA does not confer Grindling with a private right of action as to at least one of his RLA claims and he filed his RLA claims

outside the statute of limitations, his RLA claims fail. Finally, because the Court dismisses the FAC, it denies Grindling's motion to transfer as moot.

## BACKGROUND[1]

Grindling worked for Cathay as a pilot for approximately ten years until his termination in January 2022. Grindling most recently flew cargo planes for Cathay internationally and domestically, including to and from Hong Kong, Singapore, and Chicago. In late 2019, the Covid-19 virus emerged in China and spread worldwide. In March 2020, the World Health Organization declared Covid-19 a global health emergency. In December 2020, the U.S. Food and Drug Administration issued the first emergency use authorization for Covid-19 vaccines. By late August 2021, the director of the Centers for Disease Control and the press acknowledged that the Covid-19 vaccines did not necessarily prevent transmission of the virus.

During the first year of the Covid-19 pandemic, Grindling continued flying domestic and international routes for Cathay, including to Hong Kong and Canada. Beginning in late June 2021, however, Cathay increasingly stopped using U.S.-based pilots, including Grindling, for international cargo flights. Cathay paused its cargo operations in July 2021.

In spring 2021, the general manager of aircrew for Grindling's union, the U.S. Aircrew Officer's Association ("USAOA"), asked Cathay pilots to voluntarily report their Covid-19 vaccination status. Around that same time, a Cathay representative notified USAOA that it was collecting a list of vaccinated pilots. By late July 2021, Grindling saw his doctor regarding his medical history for a childhood condition that contraindicated receiving the Covid-19 vaccine. Grindling's doctor provided a note that Grindling should not receive a Covid-19 vaccine due to

---

[1] The Court takes the facts in the background section from the FAC and the exhibits attached thereto and presumes them to be true for the purpose of resolving Cathay's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

2

his medical history and a condition that prohibited him from receiving an mRNA shot. Grindling submitted this note to Cathay on July 28, 2021.

On August 29, 2021, Cathay announced a Covid-19 vaccine requirement for its U.S.-based pilots, requiring them to receive the vaccine by September 5, 2021. USAOA notified its members on September 1, 2021 that it supported Cathay's decision, noting that Cathay claimed that Hong Kong civilian authorities required those flying to Hong Kong to be vaccinated. Grindling and another Cathay pilot consulted with Hong Kong aviation medical examiners, who confirmed that the Hong Kong civil aviation division did not require pilots to obtain a Covid-19 vaccination to fly aircraft for Cathay. Grindling and the other Cathay pilot informed USAOA of this fact. On September 3, 2021, Grindling again submitted his doctor's note to Cathay, indicating that he had a medical condition that kept him from receiving the vaccine. Grindling received a response the same day, and then on October 4, 2021, Cathay directed him to fill out a medical records form to allow it to access his medical information. Grindling submitted this form to Cathay, despite having questions about the extent of access to medical records that Cathay required. To Grindling's knowledge, Cathay never contacted his doctor to obtain his medical records.

On November 25, 2021, Reena Rollason, a Cathay representative, contacted Grindling to negotiate the terms of a medical accommodation. On November 29, 2021, the parties had a meeting, in which Cathay offered Grindling the chance to resign and apply for different jobs with Cathay, none of which involved a flight crew position. On December 6, 2021, Cathay reiterated its position that Grindling could not serve as a pilot while remaining unvaccinated, indicating that if Grindling did not voluntarily resign, then Cathay would terminate his employment. Grindling responded the following day that he would consider Cathay's offered options but that

he did not believe its terms were legal. On December 15, 2021, Grindling followed up with Cathay, indicating his continued desire to work for Cathay as a pilot. He requested that Cathay honor Clause 2.7 of the collective bargaining agreement ("CBA") between Cathay and USAOA, which provides for ground duty assignments for pilots found medically unfit for flight duties. Cathay refused to honor that provision. During this time period, Grindling also submitted antibody test results to Cathay, which showed that he had previously contracted Covid-19 and so had natural immunity from the virus itself. He also raised various possible accommodations, such as flying domestic cargo routes or working in the Cathay training center in Miami, Florida.

On December 30, 2021, Grindling refused Cathay's voluntary separation package.[2] On January 4, 2022, Cathay fired Grindling for cause for what it "deem[ed]" a "missed duty" under the terms of the CBA because he could not comply with the Covid-19 vaccination requirement and so could not be scheduled for work. Doc. 31 ¶ 57. The CBA defined "missed duties" as "[w]hen an Officer either fails to report for a duty, or reports so late that he has to be replaced by another crew member, and no replacement duty is assigned." *Id.* ¶ 58.

On January 6, 2022, a USAOA representative contacted Cathay to set up an internal appeal hearing on Grindling's behalf. USAOA then filed an initial grievance on Grindling's behalf on January 13, 2022, contending that Grindling had never "missed duties" as defined in the CBA in his ten years of working for Cathay and that Cathay's decision to terminate Grindling for a "deemed missed duty" opened the door under the CBA for Cathay to terminate pilots for any reason. Cathay denied the grievance on February 18, 2022. Grindling appealed that decision, with a hearing held on March 7, 2022. The USAOA representative's notes from that hearing indicate that Cathay recognized that Grindling had a medical condition that prevented

---

[2] Cathay had also offered this package to at least six other unvaccinated pilots, all of whom accepted the offer.

him from receiving the Covid-19 vaccine. Cathay denied Grindling's appeal under the CBA on March 18, 2022. USAOA took no further action, disclaiming any legal obligation to ask that a system board of adjustment ("SBA") be convened on Grindling's behalf. After learning this, counsel advised Grindling he could not pursue an SBA on his own.

Grindling then filed a charge of discrimination against Cathay with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2022, contending that Cathay denied his accommodation request and discriminated against him in violation of the ADA. Grindling received his right to sue notice on May 3, 2023. Grindling also filed a charge of discrimination against USAOA. He received his right to sue notice for this charge on June 9, 2023. He filed this lawsuit on August 1, 2023, and the FAC on October 4, 2024.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubik v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

ANALYSIS

I.  **ADA Claims**

The Court first turns to Grindling's ADA claims.[3] The ADA "prohibit[s] discrimination against employees whose disabilities have no bearing on their ability to perform a given job," and also "ensure[s] employment opportunities for" individuals with disabilities who are otherwise qualified for a job but cannot perform it without reasonable accommodations. *Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013). To state an ADA discrimination claim, Grindling must allege that (1) he is disabled within the meaning of the ADA, (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) his disability caused him to suffer an adverse employment action. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). To state an ADA failure to accommodate claim, Grindling must allege that (1) he is a qualified individual with a disability, (2) Cathay was aware of his disability, and (3) Cathay failed to reasonably accommodate his disability. *Brumfield*, 735 F.3d at 631. Cathay argues that both of these claims fail because Grindling has not sufficiently pleaded he has a disability, a prerequisite to proceeding on either claim.

The ADA defines a disability as (1) a "physical or mental impairment that substantially limits one or more major life activities," (2) a record of a disability, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The ADA does not require employers to

---

[3] The Court previously found that the RLA preempts Grindling's ADA claims, Doc. 30 at 5–8, an argument that Cathay reprises in seeking dismissal of the ADA claims raised in the FAC. Since the Court's prior decision, the Seventh Circuit decided *Hoffstead v. Northeast Illinois Regional Commuter Railroad Corp.*, in which it found that the RLA did not preclude an ADA claim in which the defendant contended that the CBA's seniority rules justified its actions. 132 F.4th 503, 513–15 (7th Cir. 2025). Because *Hoffstead*'s analysis of RLA preemption calls into question the Court's prior conclusion that the RLA precludes Grindling's ADA claims, the Court assumes without deciding that the RLA does not preclude the ADA claims and turns to Cathay's substantive arguments concerning these claims.

provide reasonable accommodations to those regarded as having a disability, however. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 n.4 (7th Cir. 2013) (citing 42 U.S.C. § 12201(h)).

Initially, as the Court previously noted, "not being vaccinated is not a disability under the ADA." *Brode v. Xeris Pharms., Inc.*, No. 22 CV 2903, 2023 WL 7220554, at *2–3 (N.D. Ill. Nov. 2, 2023) (collecting cases); *see also Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300, at *2 (N.D. Ill. Apr. 10, 2024) (agreeing with the defendant that "a contrary conclusion would mean that every unvaccinated person in the United States is now disabled under the ADA" (citation omitted) (internal quotation marks omitted)); *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (plaintiff's refusal to get the Covid-19 vaccine was a personal choice that did not qualify as an impairment under the ADA). But Grindling alleges that he had an actual disability due to a medical condition that prevented him from becoming vaccinated and that Cathay regarded him as disabled. The Court considers whether Grindling has sufficiently alleged a disability under either of these possibilities.

First, as for an actual disability, in the FAC, Grindling does not specify the medical condition that prevented him from receiving the Covid-19 vaccine. But he states in his response that he faces a high risk of anaphylaxis due to childhood allergic reactions and family history. *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (plaintiff "may add [facts] by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint" (citation omitted) (internal quotation marks omitted)). The Court questions whether Grindling has sufficiently suggested that his potential reaction to the Covid-19 vaccine amounts to a physical impairment under the ADA. *See Phillips v. White Plains Hosp.*, No. 23-CV-11326, 2025 WL 448808, at *4 (S.D.N.Y. Feb. 10, 2025)

(collecting cases that found allegations of contraindications or allergic reactions to vaccines insufficient to allege a disability); *Robertson v. Arthur M. Blank Fam. Off.*, No. 1:23-cv-02588, 2024 WL 4688249, at *2 (N.D. Ga. Apr. 30, 2024) (finding that plaintiff did not adequately allege a protected disability where she did "not explain what she is allergic to, whether those components are in the COVID-19 vaccine, or whether she has a current medical diagnosis").

But even assuming that Grindling has an allergy to the Covid-19 vaccine that qualifies as a physical impairment, *see Doe(s) v. Pittsburgh Reg'l Transit*, 684 F. Supp. 3d 417, 427–28 (W.D. Pa. 2023) (medical conditions such as anaphylaxis that prevented plaintiff from getting the Covid-19 vaccine qualified as physical impairments under the ADA), such an allergy alone does not suffice to allege a disability under the ADA because he also must allege that the allergy substantially limits one or more life activities. 42 U.S.C. § 12102(1)(A). The ADA defines "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2). A substantially limiting impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity," with courts instead looking to how the impairment limits the individual's ability "to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Here, however, Grindling has not alleged how his allergy to the Covid-19 vaccine substantially limited a major life activity such as his ability to work. *See Haag v. Cook Cnty. Adult Prob.*, No. 17 C 05403, 2018 WL 5249228, at *3 (N.D. Ill. Oct. 22, 2018) (dismissing ADA claim where plaintiff did not include any information in the complaint to suggest "whether or how [illnesses] substantially limit one or more of her major life activities"); *Wood v. ViacomCBS/Paramount*, No. 22-CV-6323, 2024 WL 4451742, at *6

8

(S.D.N.Y. July 15, 2024) (collecting cases that have dismissed ADA claims based on the failure to allege facts that suggested that a plaintiff's inability to receive the Covid-19 vaccine substantially limited a major life activity), *report & recommendation adopted*, 2024 WL 4263117 (S.D.N.Y. Sept. 23, 2024). *But see Doe(s)*, 684 F. Supp. 3d at 427 (finding that plaintiffs who had medical conditions preventing them from getting the Covid-19 vaccine were substantially limited from working in light of a Covid-19 vaccine mandate).[4] Therefore, the Court cannot find that Grindling has sufficiently alleged an actual disability.

As for whether Cathay regarded Grindling as disabled for purposes of his discrimination claim, the ADA provides that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). But this prong "encompasses only current impairments, not future ones" and does not "cover[ ] a situation where an employer views an applicant as at risk for developing a qualifying impairment in the future." *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019). Grindling notes that Cathay acknowledged receiving Grindling's doctor's note and referred to him having a medical condition that prevented him from receiving a vaccine, contending that this establishes that Cathay regarded him as disabled. But he does not suggest how mere acknowledgment of an unspecified medical condition, without more detail, indicates that Cathay regarded him as disabled. Moreover, Grindling's allegations only suggest that Cathay viewed him to pose a potential risk to himself and others if he contracted Covid-19

---

[4] The Court does not find *Doe(s)* persuasive given that it assumes without any explanation that the medical condition preventing a plaintiff from receiving the Covid-19 vaccine substantially limits a plaintiff's ability to work. *Doe(s)*, 684 F. Supp. 3d at 427. *Doe(s)* improperly equates an employer's Covid-19 mandate with an inability to work, not the physical impairment with the inability to work.

9

because he remained unvaccinated. Such a future risk cannot satisfy the "regarded as" prong. *See Plotkin v. UChicago Argonne LLC*, No. 23-cv-3035, 2025 WL 1114648, at *3 (N.D. Ill. Apr. 15, 2025) (rejecting claim that defendant regarded plaintiff as disabled because it "believed that he was susceptible to contracting COVID-19" because he did not receive the vaccine); *Ellis v. United Airlines, Inc.*, No. 23 C 123, 2023 WL 5722887, at *2 (N.D. Ill. Sep 5, 2023) ("[T]he fact that United perceived Ellis as having a higher risk of contracting COVID-19 in the future due to his unvaccinated status does not allege a disability under the ADA." (collecting cases)). Therefore, because Grindling has not alleged that he suffered from a disability under the ADA, he cannot proceed with his ADA claims.[5]

## II.  RLA

The FAC also includes two claims under the RLA. The RLA, which applies to railroads and airlines, provides for the "prompt and orderly settlement" of labor disputes in these industries. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) (citing 45 U.S.C. § 151a). Grindling alleges that Cathay violated § 152, Seventh of the RLA by failing to provide sufficient notice of changes in "working conditions" when it implemented the Covid-19 vaccine mandate. He also alleges that Cathay violated the RLA by abrogating the CBA and failing to convene a SBA. Cathay argues that Grindling cannot pursue these claims because the RLA does not provide him with a private right of action and the statute of limitations bars these claims.

Turning first to Grindling's § 152 claim, Cathay maintains that § 152, Seventh does not provide an individual employee like Grindling with a private cause of action, relying on *Lindsay*

---

[5] The Court finds it appropriate to dismiss Grindling's ADA claims with prejudice because amendment would be futile. The Court previously indicated that, even if not precluded, his ADA claims would fail because not being vaccinated did not qualify as a disability under the ADA and that the ADA does not require employers to provide reasonable accommodations to those regarded as having a disability. Doc. 30 at 8 n.3. Despite these cautions and the opportunity to amend, Grindling failed to provide additional allegations in his first amended complaint and response brief that would allow the Court to infer that he suffers from a disability. Therefore, the Court finds that further amendment would be futile.

*v. Association of Professional Flight Attendants*, 581 F.3d 47, 56 (2d Cir. 2009). Section 152, Seventh provides that "[n]o carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title." 45 U.S.C. § 152, Seventh. Grindling does not respond to Cathay's arguments that he does not have a private right of action under this section of the RLA, effectively conceding the point. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Further, having reviewed the Second Circuit's thorough analysis of the issue, the Court agrees with its conclusion that § 152, Seventh does not provide an individual employee with a private right of action against his employer, with the appropriate remedy for any such injuries instead a claim against the employee's union for breach of the duty of fair representation. *See Lindsay*, 581 F.3d at 52–53, 56.

As for Grindling's remaining RLA claim, although not pleaded clearly, the Court understands from his response that he seeks to compel arbitration under § 184 of the RLA. In relevant part, § 184 provides:

> The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions. . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board[.]

45 U.S.C. § 184. Grindling argues that § 184 provides employees with the right to compel an employer to arbitration, relying on *Bumpus v. Airline Pilots Association, International*, 606 F. Supp. 3d 845 (N.D. Ill. 2022). In *Bumpus*, the court concluded that § 184's text, structure, and purpose all supported finding that an individual employee has a statutory right to compel arbitration, regardless of whether the union objects. *Id.* at 852–57. Cathay argues that *Bumpus*' recognition of such an individual right only applies where the employee has asserted a hybrid RLA claim, Doc. 42 at 6, and Grindling appears to concede this point in his response brief, *see* Doc. 41 at 8 ("*[I]f* the Union were already here as a Defendant, or were to be joined as a Defendant in a hybrid RLA claim, the law of the case would grant Plaintiff a statutory right to compel an SBA, even as against the Union's wish not to take Plaintiff's case to arbitration."). The Court, however, does not read *Bumpus* so narrowly, as the court there indicated agreement with the "point that leaving employees with hybrid claims as their only remedy can't be squared with Congress's interest in keeping minor disputes out of the courts." *Bumpus*, 606 F. Supp. 3d at 855 (citing *Capraro v. UPS Co.*, 993 F.2d 328, 336 (3d Cir. 1993)). Therefore, following *Bumpus*, the Court assumes that Grindling can compel Cathay to arbitration pursuant to § 184, regardless of whether it has asserted a hybrid claim or not.

This does not end the inquiry, however, as Cathay also argues that the statute of limitations bars Grindling's RLA claims. Cathay suggests that the six-month statute of limitations applicable to hybrid actions under the RLA would apply to such a claim, and Grindling does not disagree. *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985). Cathay contends that the limitations period began to run when Grindling discovered the acts constituting the alleged breach of the duty of fair representation, in other words, USAOA's refusal to pursue an SBA in connection with Grindling's termination. *See Morris v. Knutson*,

696 F. App'x 745, 745 (7th Cir. 2017) ("[W]here, as here, a plaintiff alleges that the union breached its duty of fair representation during arbitration proceedings, the six-month period begins to run whenever the union notifies the plaintiff that his appeal has been denied and that it will take no further action."); *Dozier*, 760 F.2d at 851 ("The limitations period under the RLA 'generally begins to run when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [breach of duty].'" (alteration in original) (citation omitted)); *Bumpus*, 606 F. Supp. 3d at 859 ("The claim accrues when the union makes a 'final decision' about the grievance or when, in the exercise of reasonable diligence, the plaintiff should have discovered that the union would take no further action on his grievance. So a claim may begin accruing when the union unequivocally states that it won't be taking a grievance to arbitration." (citation omitted)). Grindling alleges that he learned of USAOA's refusal to pursue an SBA on April 8, 2022. He only filed this case on August 1, 2023, well after the six-month limitations period expired, and he only raised his RLA claims in the FAC filed on October 4, 2024. Therefore, even assuming that the RLA claims related back to the date of the filing of the original complaint under Rule 15(c), Grindling's RLA claims still fall well outside the six-month statute of limitations.

  Grindling argues, however, that the statute of limitations was tolled while he exhausted his ADA claims before the EEOC. But the fact that Grindling had to administratively exhaust his ADA claims has no bearing on the limitations period for his RLA claims. *See Mounts v. United Parcel Serv. of Am., Inc.*, No. 09 C 1637, 2009 WL 2778004, at *2 (N.D. Ill. Aug. 31, 2009) ("When plaintiffs bring some claims that require exhaustion of administrative remedies as a prerequisite to suit and other claims that do not, participating in the administrative process for some claims does not operate to toll the statute of limitations for the claims that do not require

13

exhaustion."). Because Grindling filed his RLA claims too late, he cannot pursue them against Cathay.[6]

## CONCLUSION

For the foregoing reasons, the Court grants Cathay's motion to dismiss Grindling's first amended complaint [35]. The Court denies Grindling's motion to transfer [37] as moot. The Court dismisses Grindling's first amended complaint with prejudice.

Dated: July 9, 2025

SARA L. ELLIS
United States District Judge

---

[6] The Court dismisses the RLA claims with prejudice because no private right of action exists as to the § 152, Seventh claim and, even assuming that Grindling could pursue a § 184 claim against Cathay in this Court, the statute of limitations bars that claim. Grindling cannot amend his complaint further to avoid these issues.

14